NASH and others, Executors, etc. v. HEILMAN and others.

*(Circuit Court, D. Indiana. March, 1880.)*

EXECUTORS—BOND OF SURVIVING PARTNERS—ASSETS OF ESTATE.

Where a testator provided in his will that if his executors decided to collect from his surviving partners the money due to his estate, the amount should not be paid till a certain time had elapsed, the taking of notes by the executors for the amount due was not such action as released the sureties on a bond given by the surviving partners conditioned to pay "all sums of money that are now due or hereafter may become due."

In Equity.

*Harrison, Hines & Miller*, for plaintiffs.

*Shackelford & Richardson* and *Denby & Kumler*, for defendants.

DRUMMOND, C. J. This is a demurrer to the first paragraph of the complaint, by the defendants Heilman and Mackey, who are sureties upon the bond upon which this suit is brought.

The material facts which appear by the complaint are these: Thomas J. Hunt, and Semonen and Dixon, two of the defendants, in 1872 and prior thereto, were engaged in business, chiefly at Evansville, in the manufacture and sale of boots and shoes. Hunt was a resident of Massachusetts.

In the early part of January, 1873, Mr. Hunt died, leaving a will. The probate of the will was contested and the controversy continued for some time. Pending this a special executor or administrator was appointed to take possession of the property of the testator, and take care of it until the dispute about the will was settled—as it was ultimately by proof establishing the will. The present plaintiffs are the

executors of the will. One of them had resigned. Mr. Hunt, at the time of his death, supposed that the value of his interest in the firm amounted to a large sum, and upon that assumption made his will. He bequeathed various legacies to different persons, requiring the surviving partners to pay out of the assets of the firm about $34,000, in order to satisfy the legacies which he had given by his will. He supposed that there remained a large amount due him from the firm after these legacies should be paid, and by a codicil to his will, of the thirty-first day of December, 1872, he declared that if the executors decided not to collect the amount which was due to him from the firm, (obviously implying that they might exercise the power of choice,) then it might continue in the firm for the benefit of his estate. But in case they did decide the amount should be collected, then he declared that it should not be paid until a certain time had elapsed; $15,000, for example, were to be paid in four and a half years; $15,000 in five years; $20,000 in five and a half years; and whatever might be obtained afterward from the accounts of the firm which had been carried to profit and loss, if any collections should be made therefrom, the surviving partners were to have a reasonable time to pay. And there was a qualification also made to the general direction as to the payment of these amounts, viz.: that in case he was mistaken as to the amount that was due,—that is, if it were more or less than $50,000,—then that fact was to modify the directions he had given.

While Thaxter, the special administrator, had control of the property, certain arrangements were made by the executors of the will with the surviving members of the firm in relation to the disposition of the stock of the firm which was on hand on the first day of January, 1873, and also as to certain accounts that might have been received up to a fixed time on account of goods sold, and the price which the surviving partners were to pay for that, was agreed upon. There was a controversy about this for a time, but ultimately it was arranged by a sum of money being received in cash and notes for the balance given. This settlement took place on the twenty-sixth of February, 1874, and the amount fixed was $22,373.70, of which $10,080.60 were paid in cash, and two notes given for the balance, payable in six and eight months respectively. It seems that Mr. Thaxter, believing that the surviving partners were not making a proper use of the assets of the firm, and by their conduct were jeoparding the interests of the estate, on the fifth of March, 1874, filed

a bill in this court against Semonen and Dixon, asking for the appointment of a receiver, and for an injunction against them.

Thereupon the defendants appeared and filed an answer in which they set forth the facts which have been referred to; and they tendered with their answer the payment of a certain sum of money, and also the bond upon which this suit is brought. They state in their answer that not waiving their claim to the management of the partnership business, yet for the purpose of avoiding controversy as to the injunction, and appointment of a receiver or receivers as prayed for in the bill, they offered and brought into court with their answer their bond, with freehold sureties in the penal sum of $100,000, the condition being that the said defendants Semonen and Dixon should well and truly perform their duties as the surviving partners of said firm, and the defendants also avowed their readiness to execute notes in accordance with the terms of the agreement which had been made to carry out the will of Mr. Hunt. The condition of the bond which was then filed was that if "the said Peter Semonen and George Dixon shall well and truly account for and pay over to the said ——— Thaxter, administrator, as aforesaid, and his successors, all sums of money that are now due, or may hereafter become due, from them, as surviving partners" of the particular firm of which Mr. Hunt was a member, to the estate of their leading partner, Thomas J. Hunt, deceased, "this obligation shall be void, else be and remain in full force and virtue."

When this bond was filed it was accepted by the plaintiff, and the application for an injunction and appointment of a receiver was waived, and the court thereupon directed the amount which was paid into court by the defendants to be paid to the plaintiff, and the bond which had been tendered to be given to the plaintiff, a copy being left on file in the court. On this bond the two defendants that demur, as I have said, were sureties, and the contention on their part is that after this bond was executed and delivered to the plaintiffs there were acts done by the executors of Mr. Hunt which should prevent the plaintiffs from recovering on the bond. The bond was dated on the twenty-fifth day of March, 1874, and the order of the court already referred to, accepting the money and the bond and ordering both to be delivered to the plaintiff, was made on the third of April, 1874.

After the probate of the will Mr. Thaxter ceased to be the special administrator, and the executors appointed under the will assumed control of the estate.

On the eighteenth of July, 1876, they made a settlement with Semonen and Dixon of all the matters in controversy, and fixed upon the amount due from the surviving partners to the estate of Mr. Hunt, and took four notes for the amount; all of which notes, as written, bear date the thirtieth of November, 1875. These notes were for $15,865.61, payable the ninth of January, 1877; $15,000, payable the ninth of July, 1877; $15,000, payable the ninth of January, 1878; and $20,000, payable the ninth of July of the same year, with interest at 7 per cent. This settlement which was made did not include the accounts on the books to profit and loss. Anything that might be collected from these accounts was to be paid over. These notes were all payable at the Merchants' National Bank of Evansville.

It was a part of the agreement and settlement that the suit which was then pending against the surviving partners was to be dismissed, and when the settlement was consummated the suit was dismissed accordingly. It does not appear by any allegation in the complaint that the sureties on the bond were parties to this proceeding, or in fact that they had any knowledge of this settlement.

The main ground upon which it is claimed the sureties are released from their obligation under the bond, as I understand, is because of this settlement made by the executors. It is said that the rights of the parties were changed in consequence of this settlement. At least, that is the inference in the argument, although not distinctly made. It is a question whether or not they were, from what took place.

It is alleged in the complaint that these notes were taken in accordance with the terms of the will of Mr. Hunt, and payable at the times then designated. It is alleged that three of the notes had been paid according to their terms, and that the last note,—the one for the $20,000,—although demand has been made for its payment, still remains unpaid.

It is necessary to particularly examine and consider the terms of the will of Mr. Hunt, and the effect of this settlement made on the eighteenth day of July, 1876, and the condition of the bond, in order to decide this question.

The rule undoubtedly is that if, by agreement between the principals, time is given on the debt which is due after the obligation of the sureties is entered into, they are released.

The difficulty about this case is to say that there was time absolutely given on the amount that was due so as to release the sureties. The condition of the bond is that they were to pay all sums of money "that are now due, or may hereafter become due, from Semo-

nen and Dixon as surviving partners." Then the sureties agreed that Semonen and Dixon should pay to the estate of Hunt all sums that were then due or might thereafter become due. Of course the important question is what sums were then due and what sums thereafter became due, within the meaning of this condition of the bond. It cannot be said absolutely that there were any sums then due except those which are paid, and about which no controversy arises; for instance, the notes which were given at the settlement which was made between Mr. Thaxter and the surviving partners on the twenty-sixth of February, 1874. There seems to be no controversy in relation to that. The presumption is they were paid according to their terms. Therefore the only sums to which this condition of the bond can refer are those which remain to be paid by the surviving partners as the interest of Mr. Hunt in the assets of the firm.

Now, it is to be observed that by the terms of Mr. Hunt's will time was given on a certain contingency to the surviving partners for the payment of what might be due. And the allegation in the complaint is that these notes given in the settlement of the eighteenth of July, 1876, were in accordance with the terms of the will.

Then, was the arrangement which took place between the executors and the surviving partners as to the payment of what was due, such a change in the condition of the parties as existed on the twenty-fifth of March, 1874, as to entirely release the sureties from the obligation of their bond? I do not think it was. Certainly not as to the whole amount that was due. It will be recollected that the executors had a certain discretion as to a portion of the amount that was due to the estate; and upon the determination of that discretion the surviving partners were to have a number of years to make the payment. Now the presumption is that considering the circumstances under which this bond was executed—tendered in court, accepted by the court, and delivered to the plaintiff—that the sureties must have known the terms of the will of Mr. Hunt. I think the fair inference, upon the allegations of the complaint, is that that fact must have been known to them, and it will be observed that it is assumed in the condition of the bond that a portion of the money, at any rate, was not then payable by the surviving partners; and they therefore agreed that, whenever it should become payable, the surviving partners should pay it. Was not a portion of this account due within the terms of the will as was understood by the parties to which they agreed with the surviving partners? I think it was, and that the sureties agreed to that. We may assume that was the fact.

If the whole of the notes which were given on the eighteenth of July, 1876, are not due, some of them certainly are, and the sureties are liable for a portion at least of the amount. It certainly does not exempt the defendants from all liability, according to the terms of this paragraph, on the last note of $20,000. So that, it being the duty of the court, while it protects the rights of sureties, at the same time to protect the rights of those for whose benefit the obligations of the sureties are given, I hold that it cannot be said that they are released from all liability.

And perhaps I ought to say, while overruling the demurrer, that it may be quite possible, if the case should go to trial before a jury, some facts may be elicited upon which it may be the duty of the court to say to the jury, or, if it should be left to the court, for the court itself to say, that the parties are released. But upon the face of the complaint I cannot say that this is so; and the demurrer, therefore, will be overruled. It may be overruled with leave for them to answer, or I will give them the benefit of an exception if they prefer that.